PAPKE, Respondent, vs. HAERLE, Appellant.

*January 13—February 9, 1926.*

*Automobiles: Family doctrine: Daughter of car owner on errand of her own: Evidence: Admissions made during negotiations for settlement: Offers in settlement: Admissibility: Instruction: As to burden of proof: Trial: Conduct of counsel: Reference to fact that defendant has insurance.*

1. The so-called "family doctrine," making a father responsible for the negligent operation of his automobile by a minor child merely because of the relationship between them, does not obtain in this state, and the liability of the father must be predicated on the principles of agency.    p. 158.
2. While offers of compromise or settlement are inadmissible in evidence as against the person making them, any statement of fact made in the conversation or negotiations leading up to the offer is admissible as an admission of independent facts and as a real admission, while an offer in settlement is not an admission of liability, but is consistent with a desire to avoid litigation.  [Language in *Johnson v. Wilson*, 1 Pin. 65, criticised.]    p. 160.
3. A statement made by the defendant to the plaintiff, who had called upon him to procure a settlement for injuries sustained when he was struck by an automobile driven by defendant's daughter, that the daughter was in the prosecution of an errand for the defendant when the accident occurred, was admissible in evidence.    p. 160.

4. Testimony of an interested witness to the admission by defendant of a fact necessary to establish plaintiff's case, which was flatly denied by defendant, is entitled to very little weight and is insufficient to raise a jury question, especially where the attending facts and circumstances make it highly improbable that the fact alleged to have been admitted occurred. p. 161.
5. The minor daughter, driving to the village to procure a watermelon for her own use, pleasure, and satisfaction, was not engaged in the prosecution of the father's business on the theory that it was his duty to furnish her the necessities of life, so as to make him liable for plaintiff's injuries. p. 162.
6. An instruction relative to questions relating to plaintiff's case that the burden of proof rested on plaintiff and that the jury should answer the questions "Yes" or "No" as ten or more jurors were satisfied, etc., was erroneous as requiring a quantum of evidence necessary to meet the burden of proof in order to secure negative answers. p. 162.
7. Reference by plaintiff's attorney to an insurance company, in an attempt to impress the jury with the fact that defendant was insured, was improper and unethical. p. 163.

APPEAL from a judgment of the circuit court for Waukesha county: C. M. DAVISON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *McGovern, Lyons, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *F. E. McGovern.*

*Winfred C. Zabel* of Milwaukee, for the respondent.

OWEN, J. Defendant's daughter Edna, nineteen years of age, August 3, 1922, drove defendant's coupé from his cottage to the village of Hartland, a distance of about three miles. On one of the public streets of the village of Hartland she struck plaintiff with the automobile, the front wheel of which ran over him, causing him personal injuries. This action was brought to recover for the resulting damages. By a special verdict the jury found the daughter, driver of the automobile, negligent, found the plaintiff free from negligence, and that at the time of the injury the daughter was acting as the agent of the defendant. Upon

this verdict judgment was rendered in favor of the plaintiff, from which the defendant appeals.

Appellant contends that the evidence is not sufficient to justify a finding of negligence on the part of the defendant's daughter, and that it shows negligence on the part of the plaintiff as a matter of law. We find it unnecessary to consider this contention, for the reason that the case is effectually disposed of on the ground that there is no evidence which shows that the daughter was acting as the agent of the father in driving the automobile at the time the injuries occurred. The so-called "family doctrine" as applied to the use of an automobile, adopted in some states, does not obtain here, and the father is not responsible for the negligent operation of his automobile by his minor child merely because of the relationship existing between them, but liability must be predicated on the principles of agency. *Crossett v. Goelzer*, 177 Wis. 455, 188 N. W. 627; *Geffert v. Kayser*, 179 Wis. 571, 192 N. W. 26. In order to hold the father liable in this case it must appear that the daughter Edna was using the automobile in the prosecution of her father's business and acting as his agent. The only evidence offered on the part of the plaintiff to establish the fact that Edna was using the automobile as the agent of her father was the testimony of the witness Levinsky that he and the plaintiff, on Memorial Day, 1923, interviewed the defendant with reference to a settlement for the injuries sustained by plaintiff. It appears that the witness and the plaintiff called on the defendant for the purpose of procuring a settlement, but the conversation occurring between the witness and plaintiff on the one hand and the defendant on the other indicates that the defendant made no offer of compromise and had no notion whatever of making any settlement. The witness testified that in that conversation the defendant stated that at the time of the accident the daughter was in the prosecution of an errand upon which she had been sent by the defendant. It is argued by the appellant that this

testimony was inadmissible because the statements were made in the course of negotiations for a settlement.

It is well established that offers of compromise or settlement are inadmissible in evidence as against a party making them. It is stated by some courts that the reason for excluding such offers is that they are in the nature of privileged communications. Probably the true rule is that stated by Wigmore in his work on Evidence (1st ed.) § 1061, where he says:

"The true reason for excluding an offer of compromise is that it does not ordinarily proceed from and imply a belief that the adversary's claim is well founded, but rather a belief that the further prosecution of that claim, whether well founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered; in short, the offer implies merely a desire for peace, not a concession of wrong done. By this theory, the offer is excluded because, as a matter of interpretation and inference, it does not signify an admission at all. There is no concession of claim to be found in it, expressly or by implication. It would follow then, conversely, that if a plain concession is in fact made, it is receivable, even though it forms part of an offer to compromise; and this much has long been well understood."

Wigmore cites a number of cases to show that while an offer of compromise is not admissible as evidence against the person making it, any statement of fact made in the conversation or negotiations leading up to the offer is admissible. It is apparent that admissions of independent facts are real admissions, while an offer to pay a certain sum of money in compromise is not an admission of liability, but is consistent with the theory that the person making the offer is willing to pay so much money to be rid of the litigation. This distinction is also pointed out in 1 Greenleaf on Evidence (16th ed.) § 192, and 2 Jones on Evidence (3d ed.) § 291. Offers of compromise have been held inadmissible by this court in *Johnson v. Wilson,* 1 Pin. 65; *State*

*Bank v. Dutton,* 11 Wis. 371; *Richards v. Noyes,* 44 Wis. 609; *Jewett v. Fink,* 47 Wis. 446, 2 N. W. 1124; *Taylor v. Tigerton L. Co.* 134 Wis. 24, 114 N. W. 122; *Tobin v. Nichols,* 156 Wis. 235, 145 N. W. 659; *John E. DeWolf Co. v. Harvey,* 161 Wis. 535, 154 N. W. 988.

In *Johnson v. Wilson,* 1 Pin. 65, the court declared: "There is no point better settled than that declarations and admissions, made by one party to another while mutually engaged in effecting a compromise of their difficulties, cannot be given in evidence." This broad language supports appellant's contention. However, the court cites no authority to support this broad statement, and it is quite apparent that the statement of the rule was inadvisedly framed. In none of the other cases cited has the rule been stated so broadly, and in none of them have admissions or declarations which were not offers of compromise been excluded; and in *Richards v. Noyes,* 44 Wis. 609, the court quoted approvingly from sec. 192 of Greenleaf on Evidence, pointing the distinction between the admission of particular facts and the offer of a sum of money to buy peace. There is nothing in the decisions of this court committing us to the doctrine that admissions of independent facts occurring during negotiations for a settlement are inadmissible in evidence, and as such a doctrine would be without support in reason or precedent we must hold that the statement made by the father to the effect that the daughter was in the prosecution of an errand for him at the time of the accident was admissible.

While we must hold the evidence to have been admissible, we nevertheless arrive at the conclusion that the weight to be accorded to it is so far nullified by other uncontradicted evidence of facts and circumstances in the case that the testimony concerning defendant's admission did not make a jury issue concerning the question of whether the daughter was at the time acting as the agent of her father. In the first place, defendant flatly denied that he made any such

admission. It appears that he was residing in a cottage on a lake three miles from Hartland; that his place of business was in the village of Hartland, and that he was at such place of business on the day in question, or, at any rate, that he was not at home during the afternoon of that day, when Edna took the car and drove to Hartland. Edna testifies that she drove to Hartland of her own volition, without the advice, consent, or direction of either of her parents; that she went to Hartland for the purpose of purchasing a watermelon for her own pleasure and for her own use, as she was the only member of the family who ate watermelon; that her father was not at home when she started for Hartland; that he had given her no directions to go to Hartland on any errand for him; that she simply took the car without asking the consent of any one, and went to Hartland for the purpose stated.

It is well settled that the probative weight to be accorded admissions depends upon circumstances. Admissions are easily fabricated, but when they are clearly established they are entitled to considerable weight. When the fact that an admission was made at all is so doubtful as in this case, we think the testimony of a witness, confessedly much interested in plaintiff's case, to an admission of a fact necessary to establish his case, does not make a jury question of the issue where defendant flatly denies that he made such admission and where all the attending facts and circumstances make it highly improbable that he in fact had sent Edna on any errand for himself. We therefore conclude that the purpose for which Edna went to Hartland is that detailed by her own testimony. It is argued by respondent that even though she went to Hartland for the purpose of procuring a watermelon for her own use, pleasure, and satisfaction, nevertheless, it being the duty of her father to furnish her with the necessities of life, and it appearing further that the watermelon was charged to her father's account, as a matter of law she was engaged in the prosecution of her father's

business.  We do not think this is true.  We do not think she was engaged in her father's business any more than if she had gone to Hartland to buy for herself a sack of candy or to mail a letter to a friend.  It was one of those instances where she was permitted to use the family car for her own immediate and personal welfare and pleasure, and she was in no sense acting as the agent of her father or doing anything in the prosecution of his business.  For these reasons, clearly the judgment cannot stand.

While this disposes of the case, and further discussion of procedural errors assigned is unnecessary, we deem it proper to comment on one or two such errors discussed in the briefs, for the future guidance of trial courts.

In submitting question 3 to the jury the court said:

"Question 3 of the special verdict reads: Did the driver of defendant's car, Edna Haerle, fail to exercise ordinary care in respect to giving proper signals of her approach in operating and managing such automobile at and just previous to the time of the collision?  As I have already explained to you 'ordinary care,' it need not be repeated here. The burden of proof as to the affirmative of this question rests upon the plaintiff, and you will answer it 'Yes' or 'No' as ten or more of your number are satisfied to a reasonable certainty, by a preponderance of the evidence, that it should be answered."

The same language was used in connection with six other questions submitted to the jury.  It will be noticed that this placed upon the defendant the same burden to secure a negative answer that it placed upon the plaintiff to secure an affirmative answer.  This certainly was incorrect.  It was not necessary that ten or more members of the jury should be satisfied to a reasonable certainty by a preponderance of the evidence that the question should be answered "No" in order to authorize such an answer.  The question should be answered "Yes" only when ten or more members of the jury were satisfied to a reasonable certainty by a preponderance of the evidence that it should be answered "Yes."

Papke v. Haerle, 189 Wis. 156.

If ten or more were not so satisfied, then it was their duty either to answer it "No" or to disagree. The charge was plainly erroneous in requiring a quantum of evidence necessary to meet the burden of proof in order to justify a negative answer to the various questions.

We deem it our duty to refer to another incident occurring during the trial. Dr. Edward Quick testified in behalf of the defendant. On cross-examination the doctor was asked who employed him to examine this plaintiff. He answered: "Mr. Corr. He is sitting back there by the railing;" after which respondent's counsel queried, "Of the insurance company?" The defendant's counsel then requested the court to instruct the jury to disregard counsel's question and that the court reprimand counsel for this kind of an examination. The court instructed the jury to disregard whether the defendant was insured or not. This was a palpable attempt to impress upon the jury the fact that the defendant was insured. This court has held time after time that such questions are improper. It would seem that a due regard for professional ethics would prompt counsel to respect these admonitions. We cannot assume that counsel was not advised that any effort to bring before the jury the fact that the defendant was insured was improper. We entertain too high a regard for his professional ability and learning to attribute his conduct in this respect to a non-appreciation of the decisions of this court. Such practice is neither smart nor clever. High-minded practitioners will not resort to such abuses. It does not betray that respect for professional ethics and ideals that is a necessary concomitant of the truly good lawyer. We trust that incidents of this kind will not be sufficiently recurrent to destroy that degree of respect for the professional ethics of counsel that we entertain for his ability.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.